DUTTON PARTNERS, LLC v CMS ENERGY CORPORATION

Docket No. 292094. Submitted September 13, 2010, at Detroit. Decided September 21, 2010. Approved for publication November 16, 2010, at 9:10 a.m.

Dutton Partners, LLC, brought an action for negligence and trespass in the Oakland Circuit Court against CMS Energy Corporation, alleging that defendant was liable for damage resulting from a natural gas pipeline rupture that occurred in an easement on plaintiff's property. Defendant moved for summary disposition, asserting that plaintiff had sued the wrong party; that its subsidiary, Consumers Energy Company, not defendant, owned and maintained the pipeline; and that amending the complaint would be futile because the period of limitations had expired with respect to Consumers. The court, Fred M. Mester, J., denied the motion, concluding that defendant's liability arose not only from ownership of the pipeline but also from its maintenance, and denied plaintiff's motion to amend because Consumers did not have notice of the complaint within the limitations period. Defendant renewed its motion after discovery, arguing that there was no question of material fact that it did not own and was not responsible for maintaining the pipeline. Plaintiff responded that defendant was the alter ego of Consumers and identified evidence that, among other things, defendant and Consumers had the same corporate address, shared the same board of directors and corporate executives, and had made joint financial filings. The court, Lisa O. Gorcyca, J., denied the motion, concluding that factual questions remained about whether defendant and Consumers were alter egos. Defendant appealed.

The Court of Appeals *held*:

The trial court erred by denying summary disposition because there was no evidence of fraud, misuse, or wrongdoing required to justify ignoring the separate corporate entities. Absent some abuse of the corporate form, parent and subsidiary corporations are treated as separate entities. In order to state a claim for tort liability based on an alleged parent-subsidiary relationship, a plaintiff must allege the existence of a parent-subsidiary relationship and facts that justify piercing the corporate veil. Such facts

must show evidence of fraud, wrongdoing, or misuse of the corporate form. It is not enough that one corporation is the mere instrumentality of the other. Although there was evidence that showed that defendant and Consumers were alter egos, there was no evidence of fraud, wrongdoing, or misuse and thus no justification to ignore their separate corporate identities.

Reversed and remanded for dismissal with prejudice.

CORPORATIONS — SUBSIDIARIES — PIERCING THE CORPORATE VEIL.

Absent some abuse of the corporate form, parent and subsidiary corporations are treated as separate entities; to state a claim for tort liability based on an alleged parent-subsidiary relationship, a plaintiff must allege the existence of a parent-subsidiary relationship and facts that justify piercing the corporate veil; the plaintiff must show all the following: (1) that the corporate entity is a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit fraud or a wrong, and (3) that, as a result, the plaintiff suffered an unjust injury or loss.

*Padilla Kostopoulos, PLLC* (by *K. Dino Kostopoulos, Gerald V. Padilla*, and *Daniel V. Padilla*), for plaintiff.

*Sullivan, Ward, Asher & Patton, P.C.* (by *Scott D. Feringa* and *Ronald S. Lederman*), for defendant.

Before: GLEICHER, P.J., and ZAHRA and K. F. KELLY, JJ.

PER CURIAM. CMS Energy Corporation, defendant, appeals by leave granted the trial court's opinion and order denying its motion for summary disposition.[1] We reverse and remand.

### I. BASIC FACTS AND PROCEDURE

Plaintiff, Dutton Partners, LLC, owns a 177-acre development, known as "Stonegate Ravines," located in Orion Township, Michigan. An easement across the property contains an underground pipeline, which is

---

[1] *Dutton Partners, LLC v CMS Energy Corp*, unpublished order of the Court of Appeals, entered August 24, 2009 (Docket No. 292094).

used for the transportation and distribution of natural gas. On May 1, 2005, part of the pipeline ruptured and allegedly exploded, or at least caused natural gas to be released into the atmosphere. At the time, plaintiff was still working on the development of Stonegate Ravines and, as a result of the pipe's rupture, had to temporarily cease its construction on the project.

On April 30, 2008, plaintiff filed a two-count complaint alleging that defendant was negligent and that its conduct, which allegedly caused the pipe to explode, had created a nuisance and trespass on plaintiff's property. Plaintiff's complaint was filed one day before the period of limitations expired. See MCL 600.5805(10) (setting the limitations period for ordinary negligence actions at three years). In its answer to the complaint, defendant asserted that plaintiff had sued the wrong party.

### A. DEFENDANT'S CORPORATE STRUCTURE

Defendant is a corporation organized under Michigan's laws and is a utility holding company. Defendant does not have any daily operations and has no employees; instead, it derives income from the holdings of its subsidiaries in the form of dividends received on securities. Its subsidiaries are involved in various sectors of the power and energy industries. A majority of defendant's income derives from only one of its subsidiaries, Consumers Energy Company.

Consumers owns, operates, and maintains the pipeline involved in the underlying incident. However, defendant and Consumers are separate Michigan corporations, allegedly each with its own officers and board of directors. And although defendant owns 100 percent of Consumers, defendant does not own or operate any of Consumers' gas pipelines or related infrastructure.

Consumers controls its own day-to-day operations, while defendant only concerns itself with regard to major policy issues affecting Consumers. Further, the two companies allegedly keep separate books and records, their financial results are reported separately, and each entity's board of directors has its own meetings and separate minutes are kept.

Other attributes of the two corporations, however, are not so distinct. Consumers and defendant share the same physical address; Consumers' universal resource locator (URL), or its website domain, is registered to defendant; the two share the same in-house counsel; all of Consumers' and defendant's filings with the Securities and Exchange Commission (SEC) are filed jointly; the two entities share the same code of conduct, ethics manual, and set of governing principles; and defendant includes all of Consumers' assets, including its pipelines, on its balance sheets and depreciates those assets for its accounting purposes.

### B. MOTION FOR SUMMARY DISPOSITION

On September 24, 2008, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had sued the incorrect party. In its brief in support, defendant argued that it is a utility holding company separate from Consumers. Defendant relied on the affidavits of Catherine Reynolds, who testified that defendant's corporate structure is separate from Consumers' structure, and David Montague, who explained Consumers' role pre- and postinvestigation of the ruptured pipeline.

Plaintiff countered that its suit against defendant was appropriate because defendant allegedly is the alter ego of Consumers. Plaintiff supported its position that Consumers and defendant are the same entity by relying on

publicly available information showing, among other things, that the two share the same corporate address and had made joint filings to the SEC. Further, contrary to Reynolds's affidavit, plaintiff asserted that Consumers and defendant shared the same board of directors and corporate executives, relying on information from defendant's 2007 annual report and defendant's website. Plaintiff asserted that summary disposition should be denied because a question of material fact remained regarding whether defendant is the alter ego of Consumers. It also contended that that it should be allowed further discovery because defendant's liability was not limited to "ownership" of the pipeline, but included maintenance, repair, and inspection of the pipeline.

Before the trial court could rule on defendant's motion for summary disposition, plaintiff moved to amend the pleadings to add Consumers as a party. Defendant countered that leave to amend should be denied because the period of limitations had expired on plaintiff's claims.

The trial court, Judge Fred M. Mester presiding, denied defendant's motion for summary disposition and also denied plaintiff's motion to amend the complaint. In denying plaintiff's motion to amend, the court found that Consumers did not have notice of the lawsuit within the limitations period and, thus, granting the motion to amend would be futile. With regard to defendant's motion for summary disposition, the court explained: "[T]his Court finds that because the allegation of the Complaint [sic] are not limited to liability based on ownership of the line but also as to the maintenance, repair and inspection of the pipeline, defendant may be liable to the Plaintiff in other capacities than as the owner." The trial court made no explicit ruling regarding plaintiff's alter-ego theory.

### C. RENEWED MOTION FOR SUMMARY DISPOSITION

After further discovery, defendant renewed its motion for summary disposition. In its renewed motion, defendant argued that there was no question of fact that defendant does not own and is not responsible for maintenance of the pipeline at issue. In its view, the only question left to pursue was whether defendant had any of those responsibilities; it interpreted Judge Mester's order as precluding plaintiff's alter-ego theory of liability. Defendant relied on a second affidavit prepared by Montague, which indicated that defendant has no responsibilities for maintenance and repair of the pipeline.

Plaintiff responded, arguing that Judge Mester's ruling had not precluded its alter-ego theory. It reaffirmed its original position that defendant was an appropriate party because it is the alter ego of Consumers. Plaintiff did not provide any evidence that defendant was responsible for the pipeline's maintenance, repair, or inspection.

In the interim, a new trial judge, Judge Lisa Gorcyca, was assigned to the case. After oral argument, the trial court issued a written opinion and order denying defendant's renewed motion for summary disposition, concluding that defendant misinterpreted Judge Mester's ruling. The court stated:

[T]he undisputed evidence presents material factual questions regarding whether the two entities are alter egos of one another: (1) The CMS Energy 2007 Annual Report identifies "gas pipelines" of Consumers Energy as an asset of CMS Energy; (2) Both companies have the same physical address and phone number; (3) In the Internet Universal Resource Locator, www.consumersenergy.com has been registered to "CMS Energy," not to Consumers Energy; (4) Both entities share the same in-house counsel; (5) Consum-

ers Energy's letterhead describes Consumers Energy as "A CMS Energy Company;" (6) CMS enjoys the accounting benefit of depreciating the gas pipelines which are supposedly owned by its subsidiary.

In sum, this Court finds that Judge Mester's previous ruling were [sic] appropriate. Defendant has not presented any basis to set aside that ruling.

Defendant now appeals this order in this Court.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on defendant's renewed motion for summary disposition.[2] *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 712; 777 NW2d 205 (2009). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodman v Kera, LLC*, 280 Mich App 125, 134; 760 NW2d 641 (2008). We must review all the evidence in a light most favorable to the nonmoving party. *Houdek v Centerville Twp*, 276 Mich App 568, 572-573; 741 NW2d 587 (2007). Summary disposition is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Woodman*, 280 Mich App at 134. A genuine issue of material fact exists if the record leaves open an issue upon which reasonable minds could differ. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008).

## III. ANALYSIS

Defendant argues that the trial court, Judge Gorcyca presiding, erred by finding that factual questions remained with respect to plaintiff's alter-ego theory of

---

[2] We note that a successor judge has the authority to enter whatever orders his or her predecessor could have entered. MCR 2.613(B).

liability. We agree with defendant. At the outset, we note that the propriety of the trial court's ruling was questionable in the first instance. Plaintiff never pleaded facts supporting its alter-ego theory in its complaint and never moved to amend to add such facts; thus, plaintiff's complaint likely could have been dismissed for failure to state a claim.[3] However, because the trial court treated the alter-ego theory of liability as if it had been properly pleaded and raised, and ultimately denied defendant's renewed motion on the basis of plaintiff's alter-ego theory, we will treat the matter as if it had been properly presented and preserved.

Plaintiff's suit seeks to pierce the corporate veil and hold defendant liable for the acts of its subsidiary, Consumers.[4] "[I]n order to state a claim for tort liability based on an alleged parent-subsidiary relationship, a plaintiff would have to allege: (1) the existence of a parent-subsidiary relationship, and (2) facts that justify

---

[3] Despite this deficiency, defendant never moved to dismiss on this basis under MCR 2.116(C)(8); rather, both of its motions were based solely on MCR 2.116(C)(10). Defendant does argue on appeal, however, that plaintiff failed to plead specific facts seeking to have the trial court disregard defendant's corporate form and suggests that plaintiff's alter-ego argument was therefore waived and should have been dismissed for failure to state a claim. Defendant could have raised this basis for dismissal in its renewed motion for summary disposition, but failed to do so. Rather, it continued to defend itself against plaintiff's alter-ego theory, in effect forfeiting its own waiver argument. Thus, we consider defendant's argument under MCR 2.116(C)(8) to be unpreserved, and we will not dispose of this appeal on (C)(8) grounds.

[4] Plaintiff's case differs from the traditional lawsuit in which a party seeks to pierce the corporate veil because plaintiff is not attempting to hold liable defendant's individual corporate executives or shareholders. See *Rymal v Baergen*, 262 Mich App 274, 293; 686 NW2d 241 (2004) ("The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations.") (citation and quotation marks omitted).

piercing the corporate veil." *Seasword v Hilti, Inc (After Remand)*, 449 Mich 542, 548; 537 NW2d 221 (1995).

It is undisputed in this case that Consumers is defendant's subsidiary. Thus, the pertinent question is whether plaintiff has alleged sufficient facts to justify piercing the corporate veil. It is well settled under Michigan law that "absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Id.* at 547. However, the courts may ignore this presumption and the corporate veil may be pierced if, under the circumstances, respecting an otherwise separate corporate existence will "subvert justice or cause a result that would be contrary to some other clearly overriding public policy." *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984). For the corporate veil to be pierced, the plaintiff must aver facts that show (1) that the corporate entity is a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit fraud or a wrong, and (3) that, as a result, the plaintiff suffered an unjust injury or loss. *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 715; 762 NW2d 529 (2008).

> At least in the context of tort liability, relevant factors in showing that a subsidiary is a "mere instrumentality" of its parent might be that the parent and subsidiary shared principal offices, or had interlocking boards of directors or frequent interchanges of employees, that the subsidiary is the parent's exclusive distributing arm, or the parent's revenues are entirely derived from sales by the subsidiary. [*Seasword*, 449 Mich at 548 n 10.]

The trial court denied defendant's renewed motion for summary disposition, finding that material questions of fact existed regarding "whether the two entities are alter egos of one another," including:

(1) The CMS Energy 2007 Annual Report identifies "gas pipelines" of Consumers Energy as an asset of CMS Energy; (2) Both companies have the same physical address and phone number; (3) In the Internet Universal Resource Locator, www.consumersenergy.com has been registered to "CMS Energy," not to Consumers Energy; (4) Both entities share the same in-house counsel; (5) Consumers Energy's letterhead describes Consumers Energy as "A CMS Energy Company;" (6) CMS enjoys the accounting benefit of depreciating the gas pipelines which are supposedly owned by its subsidiary.

We do not disagree with the trial court's ruling in this regard. Legitimate questions exist regarding whether Consumers is a mere instrumentality of defendant, given the conflicting evidence presented below. However, the trial court erred by denying summary disposition because plaintiff failed to demonstrate any evidence of fraud, wrongdoing, or misuse of the corporate form. And after our review of the record, we cannot find any factual evidence showing that defendant merely used Consumers to commit fraudulent or otherwise wrongful acts. Nothing in the record demonstrates that Consumers was so controlled or manipulated by defendant in relation to Consumers' maintenance, ownership, and repair of the pipeline that defendant was somehow abusing its corporate shield for its own purposes. Thus, given the absence of any evidence of fraud or misuse, summary disposition for defendant should have been granted.

Significantly, plaintiff does not identify in its brief on appeal any evidence of fraud, wrongdoing, or misuse. Rather, it simply argues that Michigan law does not require such a showing in order for a parent corporation to be held liable for the acts of its subsidiary. We disagree. Plaintiff has cited no binding authority for its

proposition that it is sufficient to show merely that CMS and Consumers are alter egos.

Further, defendant's reliance on *CMS Energy Corp v Attorney General*, 190 Mich App 220; 475 NW2d 451 (1991), for the same proposition is unavailing. In *CMS Energy Corp*, this Court affirmed a decision of the Michigan Public Service Commission (PSC) that disregarded the separate corporate identities of Consumers and CMS Energy in a ruling that subjected certain Consumers' proceeds received from its own assets to the PSC's regulations. *Id.* at 231-233. Consumers had transferred the proceeds at issue to its nonregulated subsidiaries for purposes of insulating those funds from regulation, and those subsidiaries were subsequently transferred to CMS Energy's control. *Id.* at 223-226. Although the panel cited the proposition that fraud need not be shown to consider the entities as one, it did not rely on that proposition alone for its conclusion that the PSC appropriately "pierce[d] the corporate veil of the nonregulated corporate entities." *Id.* at 232. The Court explicitly cited some misuse of the corporate form that did occur under the circumstances; specifically, the subsidiaries held by Consumers were transferred to CMS Energy for the sole purpose of "avoid[ing] regulation of the proceeds to be generated by those assets." *Id.* Thus, *CMS Energy Corp* does not support plaintiff's position, but refutes it.[5]

Because a showing of fraud, wrongdoing, or misuse is required under Michigan law in order to prevail on an alter-ego theory of liability and because plaintiff proffered no such evidence, the trial court erred by denying defendant's renewed motion for summary disposition.

---

[5] We were unable to locate any binding Michigan case that has held that the corporate veil may be disregarded absent a showing of fraud, wrongdoing, or some misuse of the corporate form.

Plaintiff has not presented sufficient facts in support of its alter-ego theory of liability, and the case cannot go forward on this basis. The matter also cannot proceed against defendant in its individual capacity. Plaintiff concedes in its brief on appeal that "ownership as well as responsibility for repair, maintenance, and inspections of [the pipeline] rests with Consumers . . . and not [defendant]." Thus, there is no genuine question of material fact that defendant was not negligent and did not otherwise trespass on plaintiff's property. On remand, the trial court shall enter an order in defendant's favor dismissing the case with prejudice.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.