*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JEREMY WAYNE BURD, by
JESSICA BURD, Personal Representative,

UNPUBLISHED
May 13, 2021

Plaintiff-Appellant,

v

No. 352894
Washtenaw Circuit Court
LC No. 18-001301-NI

THOMPSON BLOCK PARTNERS, INC.,
THOMPSON BLOCK REDEVELOPMENT, LLC,
and HISTORIC EQUITIES FUND 1, LLC,

Defendants-Appellees,

and

JC BEAL CONSTRUCTION, INC.,

Defendant/Third-Party Plaintiff-
Appellee,

and

BEAL CONSTRUCTION SERVICES, INC.,

Third-Party Defendant.

Before:  K. F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In this wrongful-death action, decedent, Jeremy Burd, died while performing demolition work as an employee of a subcontractor on a construction project. Following Burd's death, the personal representative of his estate filed suit against the general contractor for the project as well as the owner of the building and other entities. The trial court granted summary disposition to defendants. Plaintiff appeals as of right. We affirm.

-1-

# I. BASIC FACTS

Burd died while performing demolition work on a building in Ypsilanti, referred to by the parties as the "Thompson Block Building." The building was constructed in approximately 1860, making it more than 150 years old. It is a large, three-story building that has been subjected to water and fire damage; it has been described as being in "very poor condition." According to deposition testimony from individuals involved with the demolition, the poor condition of the building included rotting wood, such as floors and joists, and crumbling brick.

At the time of Burd's death, defendant, Thompson Block Partners, Inc. (Thompson Partners), owned the building and planned to renovate the building for redevelopment to include residential lofts and commercial space.[1] As the owner, Thompson Partners contracted with defendant JC Beal Construction, Inc., (JC Beal) to act as general contractor for the project. In turn, JC Beal subcontracted with third-party defendant, Beal Construction Services, Inc., (BCS), to perform the demolition work on the building. Burd was employed by BCS.

On the day of his death, Burd and other BCS employees, who were under Burd's supervision, were demolishing floors in an area of the building known as "bay six." For safety reasons, work on the floors should have been conducted from the top down, meaning that workers would first remove the floor boards, then remove the joists, and finally remove beams and support columns. But Burd and the others were working from underneath, in the basement, by cutting the joists and passing them up to other workers on the floor. While in the basement, Burd asked another BCS employee, Timothy Ott, for a sledgehammer. After Ott handed Burd a sledgehammer, Burd said: "I'm going to knock [the support columns] out right now." Burd then used the sledgehammer to topple two support posts or columns. After Burd hit the second post, the floor above him collapsed. The floor—and a pile of wood stacked above—fell on Burd, trapping him beneath. Burd died of positional asphyxia.

Following an investigation by the State of Michigan, BCS was cited for several violations of the demolition standards under the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*, and related regulations. The violations related to BCS's failure to work from the top down, failure to have an appropriate demolition plan and training for workers, failure to conduct proper inspections, and the existence of safety hazards, such as the wood piled on the first floor in bay six. A postaccident engineering survey documented deteriorating wood and bricks in the building. Given these conditions, the survey indicated that workers should not have been underneath the first floor during demolition and that lumber should not have been stacked on the first floor.

Following Burd's death, plaintiff filed the current wrongful-death action. The complaint named four defendants: (1) Thompson Partners, (2) Thompson Redevelopment, (3) Historic Equities, and (4) JC Beal. Regarding Thompson Partners, Thompson Redevelopment, and Historic

---

[1] Defendant Historic Equities Find 1, LLC, was one of several investors in Thompson Partners. Defendant Thompson Block Redevelopment, LLC, (Thompson Redevelopment), did not exist at the time of Burd's death.

Equities, the complaint alleged one claim of premises liability. Regarding JC Beal, the complaint alleged three claims: (1) JC Beal was negligent in performing its contractual obligations under its general-contractor agreement, (2) premises liability, and (3) liability as a general contractor under the common-work-area doctrine.[2] Among the damages plaintiff sought were those for Burd's two biological children and three foster children, who were adopted by Burd's wife after Burd's death.

Defendants filed several motions for summary disposition, seeking dismissal of all claims and a determination that the foster children adopted after Burd's death were not entitled to damages under the wrongful-death act, MCL 600.2922. At a hearing on the summary disposition motions, plaintiff acknowledged that it had not responded to whether Thompson Redevelopment and Historic Equities were entitled to summary disposition.[3] Plaintiff also conceded that it was not contesting JC Beal's motion for summary disposition with respect to the claim founded on a general-contractor theory of liability.

Following the hearing, the trial court granted summary disposition on all counts, concluding that the case was "not a premises [liability] case" and essentially adopting defendants' arguments. Relevant to this appeal, the trial court concluded that defendants lacked possession and control over the property, that Burd was not injured by a hazardous condition on the land but by his own actions, that any hazard was open and obvious, and that plaintiff's negligence claim failed because it identified no duty separate and distinct from a contract. The trial court also granted JC Beal's motion related to the foster children's ineligibility for damages. Plaintiff now appeals.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision to grant a motion for summary disposition." *Magley v M & W Inc*, 325 Mich App 307, 313; 926 NW2d 1 (2018). In this case, defendants primarily moved for summary disposition under MCR 2.116(C)(10), and with respect to the foster children's damages, JC Beal also sought summary disposition under MCR 2.116(C)(8).

> Summary disposition is proper under MCR 2.116(C)(8) if [t]he opposing party has failed to state a claim on which relief can be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone. All well-pleaded allegations must be accepted as true and

---

[2] JC Beal in turn filed a third-party complaint against BCS, alleging that BCS was required to defend and indemnify JC Beal against plaintiff's claims. The trial court later granted summary disposition to JC Beal on the third-party complaint.

[3] Given this concession in the trial court, and plaintiff's failure to address Historic Equities and Thompson Redevelopment on appeal, we consider any claim pertaining to these defendants to be abandoned, and we will not address these defendants further on appeal. See *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009) ("Failure to brief a question on appeal is tantamount to abandoning it.").

construed in the light most favorable to the nonmoving party. Only when no factual development could possibly justify recovery, should the motion be granted.

> Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law. A motion under MCR 2.116(C)(10) tests the factual support of a complaint. A court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013) (quotation marks and citations omitted; alteration in original).]

Questions involving statutory interpretation are reviewed de novo. *Id*. at 240. "Whether a defendant is under a legal obligation to act for a plaintiff's benefit—i.e., whether a defendant owes a particular plaintiff a duty—is a question of law," which this Court reviews de novo. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

## III. PREMISES LIABILITY

Plaintiff first argues that the trial court erred by granting summary disposition to Thompson Partners and JC Beal on the claims for premises liability. Contrary to the trial court's conclusions that plaintiff could not maintain a claim for premises liability, plaintiff argues (1) that Thompson Partners or JC Beal, or both, had possession and control of the property, either in their own right or under an instrumentality theory with BCS as their alter ego, (2) that Burd was injured by a condition on the land, namely—"the condition of the joists, joist ends and the masonry 'pockets' into which they were inserted," (3) that this hazard was not open and obvious, (4) that JC Beal and Thompson Partners had actual or constructive notice of this hazard, (5) that foreseeability presented a question of fact, and (6) that the "repairman rule" did not bar plaintiff's claims but provided an alternate basis for holding Thompson Partners liable. We disagree.

In a premises liability action, a plaintiff's injury arises "from an allegedly dangerous condition on the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). A premises liability claim is distinct from a claim for ordinary negligence, *id*., and it is separate from a claim for contractor liability involving repairs to the property,[4] see

---

[4] At the outset, we emphasize that plaintiff abandoned its general contractor theory of liability in the trial court. That is, under the common law, "property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). An exception to this rule is the "common work area doctrine," under which a general contractor may be held liable when a plaintiff shows that:

> (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard

*Ghaffari v Turner Constr Co*, 473 Mich 16, 23; 699 NW2d 687 (2005). See also *Butler v Ramco-Gershenson, Inc*, 214 Mich App 521, 534; 542 NW2d 912 (1995). To establish a claim for premises liability, a plaintiff must show that "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

The duty owed by a landowner or possessor differs depending on the plaintiff's status on the land. *Id*. In this case, given Burd's status as an employee of a subcontractor on the project, there can be no dispute that Burd was an invitee, placing him among the class to whom a landowner owes the greatest duty of a care. See *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11, 14; 643 NW2d 212 (2002); *Hoffner v Lanctoe*, 492 Mich 450, 460 n 8; 821 NW2d 88 (2012). "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner*, 492 Mich at 460 (footnote omitted). This duty is breached "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id*.

## A. POSSESSION AND CONTROL

Initially, we must decide whether plaintiff can show that Thompson Partners or JC Beal, or both, had possession and control of the property as required to maintain a claim for premises liability.

"Premises liability is conditioned on the presence of both possession and control over the land." *Scola v JP Morgan Chase Bank, Nat'l Ass'n*, ___ Mich ___, ___; 949 NW2d 147, 148 (2020). "This rule is based on the principle that a party in possession is in a position of control, and normally best able to prevent any harm to others." *Finazzo v Fire Equip Co*, 323 Mich App 620, 627; 918 NW2d 200 (2018) (quotation marks, citation, and emphasis omitted). For purposes of premises liability, a "possessor" of property is defined as:

> (a) a person who is in occupation of the land with intent to control it or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

---

against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Id*. at 54.]

In this case, although plaintiff initially filed a complaint for contractor liability against JC Beal, it abandoned that theory when it conceded that it would not be challenging JC Beal's motion for summary disposition relating to *Ormsby* and the common-work-area doctrine. Plaintiff also fails to address this claim on appeal. See *State Treasurer*, 284 Mich App at 243. At this time, the issue before us is a question of premises liability, which must not be confused with general-contractor liability under *Ormsby* and the common-work-area doctrine. See *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11, 19; 643 NW2d 212 (2002).

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b). [*Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980) (quotation marks and citation omitted).]

Possession of property may be joint between multiple parties. See *Siegel v Detroit City Ice & Fuel Co*, 324 Mich 205, 214; 36 NW2d 719 (1949). But it is also possible for an owner, or someone otherwise having a right of possession, to cede complete possession and control of the property to another. See *Merritt*, 407 Mich at 554. "Ownership alone is not dispositive" of possession and control. *Id*. at 552. "Possession and control are certainly incidents of title ownership, but these possessory rights can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id*. at 552-553. This loaning of possessory rights operates to confer the "duty to make safe" and serves to make "the other party responsible for the care of invitees with respect to that part of possession and control conferred." *Finazzo*, 323 Mich App at 628.

As we explained in *Finazzo*, one situation in which possession and control may be loaned to another involves ceding possession and control to a general contractor, or in some cases, multiple contractors, in order that the contractor or contractors can make changes to the property. See *id*. at 628-630. Adopting the approach from the Restatement of Torts, this Court explained:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge. [*Id*. at 629, quoting 2 Restatement of Torts, 2d, § 384.]

This rule "applies to anyone who erects a structure upon land or alters its physical condition on behalf of its possessor, irrespective of whether he does so as a servant of the possessor or as a paid or unpaid independent contractor." 2 Restatement of Torts, 2d, § 384, comment *c*. For example, in *Finazzo*, 323 Mich App at 629, we applied this rule to a contractor hired to "make changes to [a] computer room by installing a fire suppression system . . . ." In some cases, multiple contractors may be involved, and when work on the property is divided among several parties, their respective liability is as follows:

> A possessor of land may put a number of persons severally in charge of the particular portions of the work of erecting a structure or creating any other condition upon the land. Again, a general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors. In such a case, the rule stated in this Section applies to subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him. This is also true where a master divides among several servants or contractors the erection of a structure or retains in his own charge a part of the task of erection. [2 Restatement of Torts, 2d, § 384, comment *d*. See also *Finazzo*, 323 Mich App at 629.]

Ultimately, it is the general rule "that liability for a dangerous condition should fall on the party having power to prevent injury to others on the premises." *Finazzo*, 323 Mich App at 629.

## 1. THOMPSON PARTNERS AS OWNER

In this case, Thompson Partners owned the property. But aside from this mere ownership, there is no evidence that Thompson Partners exercised possession or control over the property. Notably, the building was undergoing extensive demolition and construction. Thompson Partners played no role in these construction activities, and although Thompson Partners, as the owner had a right of possession, there is no evidence that Thompson Partners actually exercised any possessory rights over the unoccupied building while it was undergoing demolition. See *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998) ("[P]ossession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property.").

Of course, we do not suggest that an owner surrenders possession every time a contractor is hired to perform work on a property. Typically, an owner retains possession during "ordinary repairs" to the property, while in contrast, possession is usually "surrendered fully in the case of construction or demolition work," as when, for example, the owner "moves out of his building and surrenders it to the contractor while it is undergoing construction, demolition, or repair." 2 Restatement of Torts, 2d, § 422, comment *c*. The undisputed facts demonstrate that this is a case of extensive demolition in which Thompson Partners surrendered the building to its contractors, and in doing so, ceded full possession and control during demolition. See *id*.; *Merritt*, 407 Mich at 552-554. Absent possession and control of the property in question, Thompson Partners cannot be held liable under a premises liability theory. See *Scola*, ___ Mich at ___; 949 NW2d at 148.

## 2. JC BEAL AS GENERAL CONTRACTOR

Whether JC Beal had possession and control poses a closer question. In ceding control of the building, Thompson Partners retained JC Beal to act as general contractor. However, JC Beal in turn subcontracted with BCS to perform the demolition work on the building. Indeed, everyone appears to agree that BCS had possession and control of the building. Plaintiff contends that this possession was joint and that JC Beal also had possession and control because (1) Fred Beal (a member and manager of JC Beal) and Jeff Laswell (a JC Beal employee and project manager) went to the site on occasion, (2) JC Beal maintained a trailer on the property, and (3) JC Beal had a dumpster on the property, which BCS could use. In contrast, in moving for summary disposition, JC Beal offered an affidavit from Stewart Beal (BCS's president) to the effect that BCS had sole control of the building during demolition and was the only entity with keys to the building during that time.

Viewing the evidence presented in a light most favorable to plaintiff, the evidence pointed to by plaintiff does not establish a material question of fact regarding whether JC Beal, as the general contractor, possessed the property. Certainly, JC Beal was at all times the general contractor on the project, and in this role, there were occasional visits by JC Beal personnel to the property, and there was a JC Beal trailer on site. However, the fact remains that, under 2 Restatement of Torts, 2d, § 384, comment *d*, which was adopted by this Court in *Finazzo*, 323 Mich App at 629, a general contractor, like a property owner, may "sublet particular parts of the

work to subcontractors," and in such cases, a "particular contractor or subcontractor [is subject] to liability for only such harm as is done by the particular work entrusted to him." BCS had sole responsibility for the demolition work on the building and the extensive nature of this work was such that BCS possessed the property while this work was ongoing. See 2 Restatement of Torts, 2d, § 422, comment *c*. JC Beal, in contrast, performed no demolition work and was not in possession at the time of Burd's accident. Notwithstanding the presence of a trailer and an occasional visit to the site, JC Beal did not exercise control over the demolition as would support the conclusion that JC Beal should be held liable. See *Finazzo*, 323 Mich App at 629-630; 2 Restatement of Torts, 2d, § 384, comment *d*. Instead, for purposes of premises liability, liability for a dangerous condition arising on the property during demolition falls to BCS because it was the party with the power to prevent any injury.[5] See *Finazzo*, 323 Mich App at 629.

### 3. ALTER-EGO THEORY

Seeming to recognize the primacy of BCS's possession and control over the building during demolition, plaintiff also argues—indeed, it appears to be plaintiff's primary contention—that JC Beal and Thompson Partners had possession through BCS because BCS was a mere instrumentality or alter ego of the other entities. This argument lacks merit.[6]

It is a well-settled presumption in Michigan that, "absent some abuse of corporate form," separate corporate entities will be respected as such. *Seasword v Hilti, Inc*, 449 Mich 542, 547; 537 NW2d 221 (1995). To warrant disregarding separate corporate forms, "the plaintiff must aver facts that show (1) that the corporate entity is a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit fraud or a wrong, and (3) that, as a result, the plaintiff suffered an unjust injury or loss." *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 643; 802 NW2d 717 (2010).

On appeal, plaintiff focuses solely on the instrumentality question, emphasizing the father-and-son connection between Fred and Stewart Beal, the Beals' involvement with the various entities, testimony suggesting commingling of employees, business dealings between the entities,

---

[5] We again emphasize that the issue before us is one for premises liability. Potentially, on a proper showing, JC Beal could have been held liable under a general-contractor theory. But, at this point, plaintiff has abandoned its general contractor claim, and the issue on appeal is one of premises liability, meaning the question is whether JC Beal possessed and controlled the property despite the fact that BCS had been entrusted with sole responsibility for the demolition. See *Finazzo*, 323 Mich App at 628-629; 2 Restatement of Torts, 2d, § 384, comment *d*.

[6] On appeal, JC Beal notes that plaintiff failed to plead an alter ego or instrumentality theory in its complaint. Having failed to plead such a theory, to the extent that JC Beal's possession is dependent on an alter-ego theory, plaintiff's complaint could have been dismissed under MCR 2.116(C)(8). See *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 642; 802 NW2d 717 (2010). However, although JC Beal raised this issue in a reply brief in the trial court, JC Beal did not move for summary disposition under MCR 2.116(C)(8) on this basis. Therefore, JC Beal's pleading argument is unpreserved and we decline to resolve the issue on this basis. See *Dutton Partners, LLC*, 290 Mich App at 642 n 3.

and the fact that all the entities were involved with the Thompson Block Building project. Certainly, such factors may be relevant to the instrumentality question, and it is likely that the evidence offered by plaintiff would establish a material question of fact regarding instrumentality. See *id*. at 643-644. However, fatal to plaintiff's alter-ego argument is its failure to address, or to offer any evidence to establish, that JC Beal or Thompson Partners used BCS merely as an instrumentality "to commit fraud or a wrong." See *id*. The facts of this case are similar to those in *Dutton*, 290 Mich App at 644, in which we explained:

> Legitimate questions exist regarding whether Consumers is a mere instrumentality of defendant, given the conflicting evidence presented below. However, the trial court erred by denying summary disposition because [the] plaintiff failed to demonstrate any evidence of fraud, wrongdoing, or misuse of the corporate form. And after our review of the record, we cannot find any factual evidence showing that [the] defendant merely used Consumers to commit fraudulent or otherwise wrongful acts. Nothing in the record demonstrates that Consumers was so controlled or manipulated by [the] defendant in relation to Consumers' maintenance, ownership, and repair of the pipeline that [the] defendant was somehow abusing its corporate shield for its own purposes. Thus, given the absence of any evidence of fraud or misuse, summary disposition for [the] defendant should have been granted.

In short, "a showing of fraud, wrongdoing, or misuse is required under Michigan law in order to prevail on an alter-ego theory of liability," *id*. at 645, and having failed to make such a showing, plaintiff cannot prevail on an alter-ego theory.[7] Because plaintiff's alter-ego theory lacks merit and plaintiff cannot otherwise show possession and control by JC Beal and Thompson Partners, the trial court did not err by granting summary disposition to Thompson Partners and JC Beal with regard to plaintiff's premises-liability claim.

---

[7] Tangentially, we note that, even if successful, plaintiff's alter-ego theory could be problematic for plaintiff. As JC Beal notes on appeal, if BCS is a mere instrumentality, there would be a legitimate question whether Burd was actually an employee of JC Beal, making his claims against JC Beal subject to the exclusive remedy provision in MCL 418.131 of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. See *Muscat v Khalil*, 150 Mich App 114, 124; 388 NW2d 267 (1986). In other words, treatment of the corporate form involves questions of equity, and it seems unlikely that equity would allow plaintiff to pierce the corporate veil for purposes of pursuing tort claims, but to inconsistently maintain the existence of separate corporate entities in order to receive worker's compensation benefits while avoiding applicability of the WDCA's exclusive remedy provision. Cf. *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 651-652; 364 NW2d 670 (1984) (concluding that the plaintiff-employee of a subsidiary, who disregarded separate corporate forms in order to obtain worker's compensation benefits from the parent corporation, could not then rely on existence of separate corporate forms to maintain a tort action).

## B. DANGEROUS CONDITION ON THE LAND

In addition, we note that, even if we agreed with plaintiff's arguments relating to possession and control, we would conclude that Thompson Partners and JC Beal were nevertheless entitled to summary disposition on other grounds. In particular, in the course of several of their arguments—including those pertaining to notice, the open-and-obvious-danger doctrine, foreseeability, causation, and the repairman rule—the parties also debate the underlying question of whether Burd's injury arose from a dangerous condition on the property. That is, Thompson Partners and JC Beal assert that plaintiff cannot maintain a premises-liability claim because Burd was not injured by a defect on the property, but by his own act of knocking down two support columns with a sledgehammer. Plaintiff, in contrast, identifies the defect on the property as "the condition of the joists, joist ends and the masonry 'pockets' into which they were inserted." Relevant to this question regarding the nature of a premises-liability action is that it involves an injury arising from "an allegedly dangerous condition on the land." *Buhalis*, 296 Mich App at 692. In this case, although there is certainly evidence that the building was in poor condition, there is no evidence that Burd's injuries arose from any defect on the property. Instead, the undisputed facts indicate that the floor above Burd collapsed after he knocked down two columns supporting the floor with a sledgehammer.

We find these facts comparable to *Jones v DaimlerChrysler Corp*, 288 Mich App 99, 100-101; 792 NW2d 425 (2010), rev'd in part 488 Mich 1036 (2011), in which the plaintiff was an employee of an independent contractor hired to perform construction work on the owner's premises. He was injured when he fell through a trapdoor that had been opened by a coworker. *Id*. Although concluding that the defendant-owner could not be held liable for the hazard caused by the open trapdoor, this Court found a question of fact remained whether the presence, location, and design of the door constituted a dangerous condition supporting a premises liability claim. *Id*. at 108-110, 112-113. Reversing this Court's decision, the Michigan Supreme Court stated:

> The Court of Appeals theory of liability based on the presence, location and design of the hinged metal floor hatch lacks legal and factual merit. The plaintiff, who ordered the hatch to be opened, was not injured by the presence, location and design of the hatch, but rather by falling through the hole that was created when the hatch was opened. An owner of property cannot be held liable under premises liability law for a design of the property that permits an invitee or person in control of the property to create a hazardous condition where none existed before. [*Jones*, 488 Mich at 1036]

This rule applies regardless whether it is the injured party personally—or a coworker also employed by the contractor—creates the hazardous condition. See *Young v Delcor Assoc, Inc*, 477 Mich 931, 931 (2006) (concluding that the plaintiff's premises liability theory failed because, among other reasons, the hazardous condition was "created by the independent contractor.").

Likewise, contrary to plaintiff's conclusory assertions, Burd was not injured by "the condition of the joists, joist ends and the masonry 'pockets' into which they were inserted." Burd was injured by the collapse of the floor above him, which was caused by his use of a sledgehammer to knock down two support columns in the basement. We can conceive of no duty that would

require a premises possessor to construct or maintain a building such that its floors remain in place when support columns are forcibly removed during demolition.

On appeal, none of the parties focus on the wood pile stacked on the floor above, which also fell on Burd when the floor collapsed, but to the extent the presence of the wood contributed to Burd's death, the wood stacked during demolition was also a hazard created by BCS employees that did not previously exist. See *id*. In short, Thompson Partners and JC Beal cannot be held liable under premises liability law for Burd's act—or that of any of BCS's employees—that created a hazardous condition that did not previously exist. See *Jones*, 488 Mich at 1036; *Young*, 477 Mich at 931.

### C. REPAIRMAN RULE

Our conclusion that Thompson Partners and JC Beal cannot be held liable under premises liability law for Burd's act—or that of any of BCS's employees—that created a hazardous condition that did not previously exist is confirmed by consideration of the duty owed to subcontractors on the property, an issue that the parties refer to as the "repairman rule."[8] As noted, a premises owner has a duty to exercise reasonable care to protect invitees, including employees of a contractor, "from an unreasonable risk of harm caused by a dangerous condition of the land that the owner knows or should know the invitees will not discover, realize, or protect themselves against." *Butler*, 214 Mich App at 532. However, as an exception to this rule, a property owner does not have "a duty to protect the injured plaintiff, an employee of an independent contractor hired to perform construction work on the owner's premises, from the hazardous condition that contributed to the plaintiff's injury, where the defendant delegated to the contractor the task of performing the construction work." *Jones*, 488 Mich at 1036. See also *Butler*, 214 Mich App at 532 n 6.

This exception to duty does not apply, however, when "a risk separate and distinct from those created by the defects to be repaired under the contract resulted in the injury or death of a contractor or an employee." *Nemeth v Detroit Edison Co*, 26 Mich App 481, 486; 182 NW2d 617 (1970) (quotation marks and citation omitted). For example, a worker on the property who was hired to perform brick restoration was still owed a duty by the property owner with respect to the risks related to coping blocks that fell from a parapet and injured a worker. See *Butler*, 214 Mich App at 523-524, 532 n 6. Likewise, a contractor hired to paint walls was owed a duty with respect to a defective electrical system and wires because the painter was not on the property to address the electrical system. *Wilhelm v Detroit Edison Co*, 56 Mich App 116, 133; 224 NW2d 289 (1974).

In this case, focusing on "the condition of the joists, joist ends and the masonry 'pockets,'" plaintiff contends that Burd was not injured by the work that he was hired to perform and, thus, he was owed a duty. This argument lacks merit for two reasons. First, as discussed, he was not injured by the condition of the joists or the masonry pockets; he was injured when the floor collapsed after he knocked down two support columns. Second, the demolition that BCS had been

---

[8] In our review of the caselaw, we did not come across any case, published or unpublished, using the phrase "repairman rule." But for consistency with the parties' arguments, we will refer to the rule as such.

hired to perform undisputedly included removal of the joists and flooring, meaning that the risk of falling joists and flooring was *not* a separate and distinct risk as in *Wilhelm* or *Butler*. This case falls squarely within the rule that Thompson Partners, as the property owner, did not have a duty to protect Burd, as an employee of an independent contractor hired to perform work on the premises, from the hazardous condition that contributed to Burd's death because BCS had been delegated the task of performing this work.[9] See *Jones*, 488 Mich at 1036.

On appeal, plaintiff also contends that, even if this rule applies to a property owner, it does not apply to JC Beal as a general contractor. In this regard, it is important to remember that, at this point, plaintiff has abandoned its general-contractor claim and the claim at issue against JC Beal is one for premises liability. "[T]he nature of the liability faced by one who *possesses* premises, and by one who controls premises [as a general contractor] during their construction, are distinct." *Ghaffari*, 473 Mich at 25 n 4 (emphasis added). When a contractor is being sued under a premises liability theory, rather than a general contractor theory, the contractor "is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land." 2 Restatement of Torts, 2d, § 384, comment *d*. JC Beal may have had additional duties in its role as a general contractor for purposes of a potential general-contractor claim, but those duties do not alter a determination of a possessor's duty for purposes of a premises-liability claim. See *Ghaffari*, 473 Mich at 24. The concepts are distinct. See *id*. Contrary to plaintiff's arguments, if JC Beal is going to be considered the possessor of the property for a premises liability, then JC Beal "is subject to the same liability, and enjoys the same freedom from liability" as any other possessor of the land. See 2 Restatement of Torts, 2d, § 384, comment *d*; see also *Finazzo*, 323 Mich App at 630 (applying the open and obvious danger doctrine, which does *not* apply to a general contractor claim, to a premises liability claim against contractors in possession of the property).

---

[9] With respect to the repairman rule's applicability to Thompson Partners, plaintiff also makes the cursory argument that the repairman rule actually gives rise to a form of liability distinct from premises liability and that Thompson Partners, as the building owner, may be held liable under this distinct theory. Although plaintiff does not identify it as such, it appears that plaintiff is referring to the "retained control" doctrine, under which a property owner is essentially held liable as a general contractor because the property owner retained "sufficient control of the work so as to act in a superintending capacity." *Ghaffari*, 473 Mich at 31 n 7. Again, a general-contractor theory of liability is separate from a premises liability claim. See *Perkoviq*, 466 Mich at 19. As set forth in its complaint, plaintiff's claim against Thompson Partners was for premises liability, not general-contractor liability under a retained-control theory, and plaintiff has not sought to amend its complaint to add a retained-control theory. Moreover, a retained-control theory of liability, whether brought against a general contractor or an owner acting as general contractor, only applies to common work areas. *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 74; 600 NW2d 348 (1999). Plaintiff does not address the common-work-area doctrine or otherwise address Thompson Partners' potential liability under a retained-control theory. This insufficiently briefed issue, which plaintiff failed to plead in its complaint, will not be considered further. See *Lenawee Co v Wagley*, 301 Mich App 134, 160; 836 NW2d 193 (2013); *State Treasurer*, 284 Mich App at 243.

## D.  OPEN AND OBVIOUS

We also conclude that Thompson Partners and JC Beal owed no duty to protect Burd from the open and obvious hazard of a floor collapsing after two support columns were knocked down.

A premises owner has a duty to exercise reasonable care to protect invitees, including employees of a contractor, "from an unreasonable risk of harm caused by a dangerous condition of the land that the owner knows or should know the invitees will not discover, realize, or protect themselves against." *Butler*, 214 Mich App at 532.  Integral to this duty owed to an invitee is the question whether the hazard is open and obvious. *Hoffner*, 492 Mich at 460.

> The possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.  Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection.  This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue. [*Id*. at 460-461 (quotation marks and citations omitted).]

As an exception to the open and obvious danger doctrine, liability may arise when a hazard has special aspects, meaning that the hazard is either effectively unavoidable or unreasonably dangerous.  *Id*. at 461-463.

In this case, again focusing on "the condition of the joists, joist ends and the masonry 'pockets,' " plaintiff contends that the hazard was not open and obvious.  But, as already discussed, Burd was killed because the floor collapsed when he knocked down two support columns.[10]  Such a hazard is readily discoverable by a person of average intelligence on casual observation.[11]  Indeed, other BCS employees at the scene—including Ott, Seth Adams, and Jonathan Deller—recognized the risks involved.  Ott and Deller easily saw the risk and thought that they should try to prevent Burd from using the sledgehammer to hit the support columns, but there was simply not time to stop him.  And Adams testified that it was a matter of "common sense" that one should not hit support columns.  The danger of the floor collapsing if the posts were removed was an open and obvious hazard; indeed, it was a known hazard created by Burd.  Cf. *Bredow v Land & Co*,

---

[10] Given the open and obvious nature of the hazard, this is not simply a question of Burd being comparatively negligent, it is an instance in which Thompson Partners and JC Beal owed Burd no duty in the first instance.  See generally *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95-100; 485 NW2d 676 (1992).

[11] On appeal, there is some discussion by the parties about Burd's expertise in demolition.  This is largely irrelevant, however, to the open and obvious danger doctrine, which involves "a reasonably prudent person standard," rather than consideration of subjective expertise.  See *Laier v Kitchen*, 266 Mich App 482, 499; 702 NW2d 199 (2005) (opinion by Neff, J.).  In our view, the danger that the floor above would collapse when two support columns are removed is objectively open and obvious to an ordinary person, without regard to specialized demolition knowledge.

498 Mich 890, 890 (2015) (concluding that the danger posed by large icicles and falling ice, which the plaintiff undertook to knock down from the roof with a shovel, was open and obvious); *Jones*, 488 Mich at 1036 (concluding landowner was not liable when the plaintiff "was aware of the hazard, and indeed had ordered its creation"). Plaintiff does not attempt to identify any special aspect. Accordingly, under a premises-liability theory, Thompson Partners and JC Beal had no duty to fix, guard against, or warn Burd of the hazard. See *Hoffner*, 492 Mich at 460-461.

## E. NOTICE

Recognizing that Burd was not injured because of the condition of the joists or the masonry pockets, but because the floor collapsed when Burd knocked down two support columns with a sledgehammer, we also conclude that Thompson Partners and JC Beal lacked notice of the hazard and cannot be held liable under a premises-liability theory.

To prevail on a premises-liability claim, a plaintiff must show that the defendant "possessed actual or constructive notice of the dangerous condition." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 10; 890 NW2d 344 (2016). A landowner will be considered to have such notice when "an unsafe condition [was] caused by the active negligence of himself and his employees," or "when the unsafe condition, otherwise caused, is known to the [landowner] or is of such a character or has existed a sufficient length of time that he should have knowledge of it." *Id*. (quotation marks and citation omitted). In this case, there is no evidence that Thompson Partners or JC Beal had actual or constructive knowledge of the hazard that caused Burd's death. Instead, as discussed, Burd—and potentially others at BCS who failed to ensure that the work was completed safely from the top down—caused the hazard by removing two support columns with a sledgehammer. See *Young*, 477 Mich at 931 (concluding that the property owner did not have notice of the temporary construction hazard created by the independent contractor). On this basis, defendants were also entitled to summary disposition.

For all these reasons, viewing the evidence in a light most favorable to plaintiff, no material question of fact remains regarding plaintiff's premises-liability claims. Accordingly, the trial court did not err by granting summary disposition on premises-liability claims to Thompson Partners and JC Beal under MCR 2.116(C)(10).

## IV. NEGLIGENCE AND CONTRACTUAL DUTIES

On appeal, plaintiff also argues that the trial court erred by dismissing its claim for negligence against JC Beal, which was premised on the assertion that JC Beal failed to exercise due care in undertaking its obligations in the general-contractor agreement between JC Beal and Thompson Partners. The trial court properly granted summary disposition to JC Beal because plaintiff failed to identify a duty that JC Beal owed to Burd that was separate and distinct from its contractual obligations.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke*, 489 Mich at 162. The pivotal question in this case in one of duty. Relevant to plaintiff's claims, in the context of "tort actions based on a contract and brought

-14-

by a plaintiff who is not a party to that contract," "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004). "If no independent duty exists, no tort action based on a contract will lie." *Id*. (footnote omitted). The *Fultz* rule—requiring a legal duty independent of a contract—was further clarified in *Loweke*, 489 Mich at 169-171, in which the Court explained:

> [A] separate and distinct duty to support a cause of action in tort can arise by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings . . . .
>
> * * *
>
> Stated another way, under the separate and distinct mode of analysis, [e]ntering into a contract with another pursuant to which one party promises to do something does not alter the fact that there [exists] a preexisting obligation or duty to avoid harm when one acts.
>
> Thus, under *Fultz*, while the mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort, the existence of a contract [also] does not extinguish duties of care otherwise existing . . . . *Fultz* did not extinguish the simple idea that is embedded deep within the American common law of torts . . . : if one having assumed to act, does so negligently, then liability exists as to a third party for failure of the defendant to exercise care and skill in the performance itself. [Quotation marks and citations omitted; second to fourth alterations in original.]

In this case, seeming to disregard the need to identify a separate and distinct duty independent of the contract, plaintiff expressly relies on the general-contractor agreement between Thompson Partners and JC Beal in an effort to establish that JC Beal owed a duty of care to Burd, as a third party. Such an argument is untenable under *Loweke* and *Fultz*. As *Loweke* recognized, the "mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort," and it must be shown that "*aside from the contract*, the defendant owed [an] independent legal duty to the plaintiff." *Id*. at 170, 172 (emphasis added).

In an attempt to transform JC Beal's contractual obligations into a separate duty supporting a tort claim, plaintiff suggests that there is a separate and distinct duty because JC Beal had an obligation to perform its contractual obligations with due care. But the duty to perform contractual undertakings with due care involves a duty to not create any *new hazard* in the performance of the contract. See *Hill v Sears, Roebuck & Co*, 492 Mich 651, 671; 822 NW2d 190 (2012) ("[O]ne breaches a duty that is 'separate and distinct' from the contract when it creates a 'new hazard.' "); *Fultz*, 470 Mich at 469 (concluding that the duty to use reasonable care in removing dangerous ice and snow was not distinct from contractual obligations when failure to fulfill snow-removal duties "created no new hazard"). It follows that JC Beal could not create any new hazards in the performance of its contractual duties. But there is no evidence of any new hazard created by JC Beal's failure to perform its contractual duties; indeed, the poor condition of the joists and pockets,

on which plaintiff bases its claims, was the same before and after JC Beal became the general contractor. Cf. *Hill*, 492 Mich at 671. Although JC Beal certainly had a duty to avoid harm when acting, see *Loweke*, 489 Mich at 170, there is no general tort "duty that obligates one person to aid or protect another," *id*. at 164 (quotation marks and citations omitted). The existence of a contract between JC Beal and Thompson Partners—although not extinguishing JC Beal's separate and distinct duties—does not support plaintiff's negligence claim founded on JC Beal's alleged breach of its contractual duties. See *id*. at 172. In the absence of a separate and distinct duty, the trial court did not err by dismissing plaintiff's negligence claim premised on JC Beal's breach of contractual duties.[12] See *id*.

## V. WRONGFUL-DEATH DAMAGES

Finally, plaintiff argues that the trial court erred by concluding that three minor children, who were in foster care with Burd and his wife, and who were later adopted by Burd's wife after his death, could not share in any wrongful-death damages under MCL 600.2922(3). Given our conclusion that the trial court properly granted summary disposition to defendants, it is unnecessary to reach this question related to damages.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica

---

[12] Realistically, any separate and distinct duty JC Beal owed to BCS's employees, such as Burd, was the common-law duty imposed on general contractors. See *Loweke*, 489 Mich at 170; *Clark v Dalman*, 379 Mich 251, 262; 150 NW2d 755 (1967). But we again note that, although plaintiff initially pleaded such a claim, it later conceded that it could not satisfy the common-work-area doctrine under *Ormsby*, 471 Mich at 45, and plaintiff does not identify this general-contractor duty as a separate duty on appeal. Accordingly, to the extent that JC Beal, as the general contractor, potentially owed a separate and distinct duty to Burd, plaintiff abandoned that claim. See *State Treasurer*, 284 Mich App at 243.