*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

HANNAH COWAN,

        Plaintiff/Counterdefendant-Appellant,

v

STUBBORN REBEL FARMS and ZACHERY
SHANKEL,

        Defendants/Counterplaintiffs-
        Appellees,

and

MODERN SHED DESIGN,

        Defendant-Appellee.

UNPUBLISHED
August 26, 2025
1:55 PM

No. 365169
St. Clair Circuit Court
LC No. 21-001572-CH

---

HANNAH COWAN,

        Plaintiff-Appellant,

v

TERA SHANKEL, ZACHERY SHANKEL, and
MODERN SHED DESIGN,

        Defendants-Appellees.

No. 367451
St. Clair Circuit Court
LC No. 23-000086-CZ

---

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

In Docket No. 365169, plaintiff, Hannah Cowan, appeals as of right the final judgment awarding her $52,868.42 in damages against defendant Stubborn Rebel Farms Inc. (Stubborn

-1-

Rebel Farms), as well as statutory interest and costs, in this action arising from an agreement to build three outdoor structures, known as sheds, for plaintiff's winery business (the initial lawsuit). Plaintiff likewise appeals the court's order granting summary disposition to defendant Zachery Shankel (Zachery) pursuant to MCR 2.116(I)(2). In Docket No. 367451, plaintiff appeals as of right the order granting defendants Tera Shankel (Tera), Zachery, and Modern Shed Design's motion for summary disposition under MCR 2.116(C)(7) and (C)(8) in a subsequent lawsuit arising from the same overarching dispute (the subsequent lawsuit).[1] In Docket No. 365169, we affirm in part, reverse in part, vacate in part, and remand for proceedings consistent with this opinion. In Docket No. 367451, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I. FACTUAL AND PROCEDURAL HISTORY

These consolidated appeals relate to plaintiff's purchase of three sheds from Stubborn Rebel Farms. Zachery is the owner and president of Stubborn Rebel Farms. Tera, who is Zachery's wife, owns Modern Shed Design, Inc. (Modern Shed Design). In early 2021, plaintiff and her husband, Robert Cowan (Robert), decided to open a winery on their property with money plaintiff inherited from her father. Plaintiff contracted with Stubborn Rebel Design to build sheds for their business—a winery, a greenhouse, and an office. In April 2021, Robert contacted Zachery and the two discussed the project. Zachery quoted Robert $29,100 for the completion of all three sheds and said that if payment arrived by April 23, 2021, then the sheds would be complete in mid-June 2021. An invoice was sent reflecting the quoted price.[2] The parties dispute exactly when plaintiff paid for the sheds, but it was no later than April 24, 2021.

The delivery of the sheds was delayed into July 2021. The parties dispute whether it was caused by Stubborn Rebel Farms' internal delays or resulted from Robert's requested changes and the need to obtain site-approval. Regardless, the delay issue reached a turning point in late July 2021. Robert went to Stubborn Rebel Farms' workshop, purportedly to take photographs of the winery shed for the site-approval process. Zachery was not there, but Robert spoke to Zachery's landlord. Zachery was upset that Robert came onto the property and potentially disrupted his relationship with his landlord. Although Robert and Zachery initially attempted to work out their differences, by July 23, 2021, the parties' relationship had broken down. The parties dispute whether Zachery or Robert repudiated the contract first. Regardless, by the end of July 2021, Robert's attorney sent Zachery a letter demanding a refund within 72 hours.

In early August 2021, Tera formed Modern Shed Design. According to Zachery, this company constructs higher-end sheds than Stubborn Rebel Farms does. Yet the two companies

---

[1] This Court consolidated the appeals, arising from the same dispute between the parties, to advance the efficient administration of the appellate process. *Cowan v Stubborn Rebel Farms*, unpublished order of the Court of Appeals, entered September 27, 2023 (Docket Nos. 365169 and 367451).

[2] The parties did not execute and sign a formal contract, but do not dispute that they entered into a contract for the sheds.

shared workers and a workshop. Additionally, Stubborn Rebel Farms' social-media pages also mentioned Modern Shed Design.

Plaintiff[3] sued Zachery and Stubborn Rebel Farms for breach of contract, statutory conversion, and common-law conversion. These two defendants counterclaimed for breach of contract. In May 2022, plaintiff amended her complaint to add Modern Shed Design as a defendant after learning of the company's existence. She did not name Tera as a defendant.

In June 2022, plaintiff moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing she was entitled to judgment as a matter of law on her claims. Defendants responded, arguing that summary disposition was improper because genuine issues of material fact existed. In September 2022, after a hearing on the motion, the trial court granted summary disposition in plaintiff's favor on her breach-of-contract claim against Stubborn Rebel Farms, ruling that plaintiff was at least entitled to reimbursement of the $29,100 and further holding that an evidentiary hearing would be conducted to determine the exact amount of plaintiff's damages. However, the court granted summary disposition in defendants' favor under MCR 2.116(I)(2) on plaintiff's common-law conversion and statutory conversion claims, her breach-of-contract claim against Zachery individually, as well as plaintiff's claims against Modern Shed Design, which were predicated on a piercing-the-corporate-veil theory.

The evidentiary hearing on damages was held on October 28, 2022, after which the trial court instructed the parties to present briefs on the issue.

On October 26, 2022, two days before the scheduled evidentiary hearing on damages, plaintiff filed a motion for leave to amend the complaint to add claims for fraudulent conveyance, successor liability, and piercing the corporate veil. Plaintiff alleged that Stubborn Rebel Farms recently ceased operations and transferred its assets to Modern Shed Design and Zachery to evade creditors. At the hearing, which took place on November 21, 2022, the trial court denied the motion, partly based on the fact that it had already approved entry of a final judgment that would resolve the last pending claim and close the case.

In February 2023, the court entered the judgment for $52,868.42, which included additional damages associated with the winery shed, but did not include any damages pertaining to the greenhouse and office sheds. Plaintiff's appeal in Docket No. 365169 followed.

Plaintiff filed the subsequent lawsuit that added Tera as a defendant and raised claims of fraudulent conveyance, successor liability, piercing the corporate veil, and civil conspiracy, even though the trial court rejected plaintiff's attempt to amend her complaint to add the majority of these claims in the initial lawsuit. Defendants moved for summary disposition, which the trial court granted on the basis of res judicata and plaintiff's failure to state a claim on which relief could be granted. Plaintiff appealed this decision in Docket No. 367451.

---

[3] Although Robert was authorized by plaintiff to negotiate and interact with Zachery, he was not named as a party.

## II. BREACH OF CONTRACT

Plaintiff first argues that the trial court erred and violated her right to due process of law by granting summary disposition under MCR 2.116(I)(2) in favor of Zachery on plaintiff's breach-of-contract claim in the initial lawsuit because neither party raised the issue of Zachery's individual liability. While we agree that plaintiff did, in fact, allege in her complaint that Zachery was liable to her for breach of contract, we nonetheless find that dismissal of the breach of contract claim as to Zachary was proper.

An appellate court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is appropriate under MCR 2.116(C)(10) when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020). A (C)(10) motion tests the factual support for a party's claim and is granted "if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id*. (quotation marks and citation omitted). A genuine issue of material fact exists if the record, after giving the benefit of reasonable doubt to the nonmovant, leaves open an issue on which reasonable minds may differ. *Id*.

The trial court granted summary disposition in favor of Zachery, a nonmoving party, under MCR 2.116(I)(2). MCR 2.116(I)(2) provides, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

Plaintiff contends that *Al-Maliki v LaGrant*, 286 Mich App 483; 781 NW2d 853 (2009), supports her position that the dismissal of the breach-of-contract claim against Zachery violated her due-process rights. In *Al-Maliki*, the defendant in a tort case arising out of a motor vehicle accident moved for summary disposition arguing that the plaintiff could not prove that her injuries met the threshold requirements of Michigan's no-fault insurance act, MCL 500.3101 *et seq*. At the hearing on the motion, the trial court sua sponte granted summary disposition to the defendant under MCR 2.116(C)(10), on the basis that plaintiff could not prove that her injuries were proximately cause by the defendant's negligence (i.e., the court found that plaintiff had failed to prove proximate causation even though that issue was not raised in the defendant's motion for summary disposition). *Id*. at 484. On appeal, the plaintiff argued the trial court's ruling violated procedural due-process principles. *Id*. at 485. This Court explained, "The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard." *Id*. Thus, "[w]here a court considers an issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing." *Id*. at 485-486. More specifically the "error by a court in granting summary disposition sua sponte without affording a party an adequate opportunity to brief an issue and present it to the court may be harmless under MCR 2.613(A), if the party is permitted to fully brief and present the argument in a motion for reconsideration." *Id*. at 486.

More recently, this Court clarified that when the trial court decides a motion for summary disposition on the issue before it, there is no due-process violation, even when the court grants

summary disposition under MCR 2.116(I)(2). See *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 520; 980 NW2d 530 (2021). And a formal motion may not be required for an issue to properly be before the court when the position of both parties is presented to the court. See *Alpine Constr Co v Gilliland Constr Co*, 50 Mich App 568, 572 n 2; 213 NW2d 824 (1973).[4]

No procedural error occurred in this case because the trial court granted summary disposition on an issue before it—whether defendants were liable for breach of contract. Unlike the facts in *Al-Maliki*, the trial court here decided the issue on plaintiff's motion for summary disposition, in which plaintiff raised a broad argument asking the court to find that plaintiff was entitled to judgment as a matter of law on the issue of breach of contract. While plaintiff did not specifically discuss the issue of Zachery's individual liability, she requested the court enter judgment as a matter of law on her breach-of-contract claim against all defendants, including Zachery. Plaintiff's motion placed the issue of Zachery's liability before the court. Accordingly, this case is factually inapposite to *Al-Maliki*.[5] The court did not deprive plaintiff of due process.[6]

Addressing the merits of the issue, the trial court did not err by granting summary disposition in Zachery's favor. The trial court concluded that Zachery was not individually liable for breach of contract because there was no evidence that he intended to be personally bound by the contract. It is a longstanding principle of Michigan law that corporate officers and agents generally are not personally liable for breach of contract on the part of the company. See *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514; 742 NW2d 140 (2007) (concluding

---

[4] Opinions of this Court issued before November 1, 1990 are not binding upon this Court under MCR 7.215(J)(1), but may be considered persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 383 (2012).

[5] A review of plaintiff's motion for summary disposition reveals that she sought dismissal of "all claims" including defendants' counter-claim, liability claims, and damages. In contrast to *Al-Maliki*, plaintiff raised the issue of defendants' contractual liability. At the dispositive motion hearing, she did not withdraw her request for complete relief. Her contention that the issue was raised sua sponte by the trial court is belied by her own motion. Further, a party may not harbor error as an appellate parachute by assigning error on appeal to actions deemed proper by counsel in the trial court. *Clohset v No Name Corp*, 302 Mich App 550, 566; 840 NW2d 375 (2013).

[6] Plaintiff also suggests that defendants waived the issue of Zachery's individual liability for breach of contract by failing to raise it in the trial court, citing *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) (explaining that in the context of the appeal at hand, the "plaintiffs have waived the issue by giving it such cursory treatment"). But plaintiff's argument ignores that she moved for summary disposition, not defendants. Defendants' arguments were in response to the arguments raised in plaintiff's motion, which could have, but did not, explicitly include an argument regarding Zachery's individual liability. *Blazer Foods* involved an issue where the appellant did not develop fully its arguments on appeal. Thus, *Blazer Foods* does not apply here. Nor are we persuaded that defendants were required to assert this argument as an affirmative defense because it pertains to the merits of plaintiff's prima facie case. See *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9; 614 NW2d 169 (2000).

that signing a document in one's capacity as a corporate officer precluded individual liability); *Warren Tool Co v Stephenson*, 11 Mich App 274, 296; 161 NW2d 133 (1968).

The fact that there was no evidence suggesting that Zachery intended to be bound by the contract further distinguishes this case from *Al-Maliki* because, while there was a reasonable basis to believe that the plaintiff in *Al-Maliki*, if given time, could have provided evidence refuting the issued raised sua sponte by the trial court, there is no reasonable basis to believe that plaintiff in the present case could have provided similarly sufficient evidence. Specifically, in *Al-Maliki*, there was a reasonable expectation that the plaintiff could have procured a treating physician's affidavit regarding causation or identified a medical report that addressed the issue of causation, if the court had simply allowed the plaintiff to address the issue. In contrast, in the present case, the only written memorialization of the original terms of the contract consisted of an invoice issued by Rebel Farms. There is no reasonable likelihood that plaintiff could have produced any additional documentation that would have made Zachary, individually, a party to the contract.

Plaintiff further suggests that the trial court failed to give her the opportunity to present evidence that the contract was not fully integrated; however, she does not present any further argument or any parol evidence to support this interpretation of the contract. Instead, plaintiff argues that she did not have the opportunity in the trial court to advance her legal theory that Zachery was personally liable for breach of contract because he retained contract funds for purposes other than to complete the project, in violation of § 2 of the Michigan Builders' Trust Fund Act (MBTFA), MCL 570.151 *et seq*. The elements of a MBTFA claim are:

> (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project. [*BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 585; 794 NW2d 76 (2010) (quotation marks and citation omitted).]

Plaintiff did not raise a claim under the MBTFA, or even cite the MBTFA, in her first-amended complaint. She also did not distinguish her breach-of-contract claim against Zachery from her breach-of-contract claim against Stubborn Rebel Farms and Modern Shed Design. And plaintiff failed to cite the MBTFA in her motion for summary disposition. Even if she had, plaintiff does not present an argument on appeal explaining how she could establish each element of a MBTFA claim. Nor does she suggest that additional evidence existed on the issue that the trial court did not consider. Therefore, she has abandoned the issue on appeal. *Conlin v Scio Twp*, 262 Mich App 379, 384; 686 NW2d 16 (2004) ("A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the party's claim.").

In sum, because insufficient evidence was submitted to create a question of fact as to whether Zachery agreed to be personally bound by the terms of the contract, the trial court did not err by dismissing plaintiff's breach of contract claim against Zachery.

### III. CONVERSION CLAIMS

Plaintiff contends that the trial court erred by granting summary disposition in defendants' favor on plaintiff's common-law and statutory conversion claims because the trial court considered legal issues relating to the conversion of cash that were not raised in the summary-disposition briefing. We disagree.

Consistent with the first issue on appeal, we conclude that the trial court's ruling on plaintiff's conversion claims did not implicate any due-process considerations. Plaintiff brought this issue before the trial court when she argued that it should grant summary disposition on her statutory-conversion claim. This placed the validity of plaintiff's conversion claims before the court. Plaintiff had the opportunity to discuss the legal basis for her conversion-of-cash claim, and, indeed, she cited caselaw to support her position. She simply did not articulate the caselaw distinguishing the conversion of cash from the conversion of chattels. No due-process violation occurred.

Addressing the merits of the court's ruling, the trial court did not err by concluding that plaintiff failed to establish a common-law or statutory conversion of plaintiff's money. "Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citation omitted). Conversion is an intentional tort because the converter acts willfully. *Id*. at 314-315. "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id*. at 315.

MCL 600.2919a(1) allows for the recovery of treble damages, costs, and reasonable attorney fees for either of the following:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

There was no argument by plaintiff that any of the defendants bought, received, possessed, concealed, or aided in concealing stolen, embezzled, or converted property, for purposes of MCL 600.2919a(1)(b). Rather, the focus was on whether defendants converted the money to their own use. To recover treble damages for statutory conversion under MCL 600.2919a(1)(a), in addition to establishing the elements of common-law conversion, the plaintiff must establish that the conversion "was for the defendant's 'own use,' " meaning that the defendant converted the

property "for some purpose personal to the defendant's interests" even if the personal purpose is not the purpose for which the property is ordinarily intended. *Magley*, 325 Mich App at 314 n 3.[7]

Regarding the conversion of money, "[m]oney is treated as personal property, and an action may lie in conversion of money provided that there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified." *Allen v Mich State Univ*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 358135, 358136, and 358137); slip op at 18 (quotation marks and citation omitted). The money or checks must be identical and cannot merely be a payment. *Id*. at ___; slip op at 18 (citation omitted). The plaintiff must establish that the defendant was obligated to return the specific money that was entrusted into their care. *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999). Additionally, the defendant must obtain the money without the consent of the owner, which creates a debtor-creditor relationship. *Id*. at 112.

In *Allen*, the plaintiffs' sued Michigan State University under various theories for reimbursement of tuition payments after the university cancelled in-person classes during the COVID-19 pandemic. This Court held that, in an action for conversion, the money or checks a defendant is obligated to keep intact or deliver must be identical and cannot merely be a payment. *Allen*, ___ at ___; slip op at 18. As a result, the plaintiffs' claim for conversion, resulting from the defendant's alleged failure to reimburse tuition payments, failed. *Id*.

In this case, there is no dispute that plaintiff did not consent to a creditor-debtor relationship. But there is no evidence that defendants were obligated to keep the $29,100 intact or deliver that specific amount to plaintiff. Rather, the $29,100 constituted a payment for construction of the three sheds. Furthermore, while plaintiff asserted that defendants exercised wrongful dominion and control over the $29,100, which they had promised to keep separate, and converted the funds to pay preexisting debts and for other personal beneficial uses, plaintiff presented no evidence to support her argument that defendants promised to keep the $29,100 separate, or that they had any obligation to return that specific money to plaintiff should the parties rescind the contract. Nor did defendants obtain the money without plaintiff's consent. Instead, plaintiff acknowledged that she voluntarily paid defendants the $29,100. Accordingly, the trial court did not err by finding that plaintiff could not establish the elements of common-law or statutory conversion.[8]

---

[7] "Although its language is rooted in common-law conversion, the tort established in MCL 600.2919a(1)(a) is not the same as common-law conversion. Rather, the separate statutory cause of action for conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 361; 871 NW2d 136 (2015).

[8] For purposes of statutory conversion, the bank records plaintiff attached to her motion for summary disposition did not establish that defendants misappropriated the $29,100 for some purpose personal to defendants' interests. Most of the bank-statement entries are vague. It is not clear from the face of the documents that defendants used the $29,100 for some personal purpose.

## IV. PIERCING THE CORPORATE VEIL

Plaintiff next argues the trial court erred by granting summary disposition under MCR 2.116(I)(2) of her claims against Modern Shed Design, which were predicated on a piercing-the-corporate-veil theory. Specifically, plaintiff argues that Modern Shed Design is an alter ego of Stubborn Rebel Farms and Zachery. We disagree, but for the reasons stated later in this opinion, we hold that plaintiff should have been permitted to amend her complaint to allege a claim of successor liability against Modern Shed Design.

We review de novo the trial court's decision on piercing the corporate veil. *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 509; 802 NW2d 712 (2010).

A corporation is a legal fiction, i.e., it is an artificial being, invisible, and existing only in contemplation of law. *Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015). Absent abuse of the corporate form, courts honor this fiction by indulging the presumption, referred to as the corporate veil, that the entity is separate and distinct from its owner or owners. *Id*. at 451. In fact, courts will honor this presumption even when a single individual owns and operates the corporate entity. *Id*. "[T]he fiction of a distinct corporate entity separate from the stockholders is a convenience introduced in the law to subserve the ends of justice." *Id*. (quotation marks and citation omitted). But, "[w]hen this fiction is invoked to subvert justice, it is ignored by the courts." *Id*. More specifically, when the notion of a corporation or other legal entity "is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." *Id*. Thus, a court sitting in equity may overlook the legal fiction of the corporate existence (i.e., may pierce the corporate veil) when doing so would "avoid fraud or injustice." *Id*. (quotation marks and citation omitted). "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996).

To pierce the corporate veil, the complainant must establish that "(1) the entity was the mere instrumentality of the owner, (2) the owner exercised his or her control in such a manner as to defraud or wrong the complainant in some way, and (3) the complainant would suffer an unjust loss or injury unless the court disregards the existence of the entity as separate from its owner." *Green*, 310 Mich App at 454.[9] When reviewing the issue, "[t]he entire spectrum of relevant fact

---

Nor is it clear from the face of the documents that defendants failed to pay their suppliers, laborers, and subcontractors for the project. And we continue to reject plaintiff's reliance on the MBTFA for the creation of a legal obligation in the context of conversion because this argument was not raised in the trial court.

[9] This formulation of the test for piercing the corporate veil was initially established by the Michigan Supreme Court in *Gledhill v Fisher & Co*, 272 Mich 353; 262 NW2d 371 (1935). *Green*, 310 Mich App at 454. As we noted in *Green*, the test first stated in *Gledhill* remains binding on this Court. *Id*. at 457.

forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Foodland Distrib*, 220 Mich App at 456-457 (quotation marks and citation omitted; alteration in original). Thus, the court must consider the totality of the evidence to determine whether the evidence establishes that the owner was operating the entity as an alter ego, i.e., "as a sham or mere agent or instrumentality of his or her will." *Green*, 310 Mich App at 458. For the element of fraud, the plaintiff must show "that the owner exercised his or her control over the entity in such a manner as to wrong the complainant." *Id*. However, "establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence." *Id*. at 459. For the final element, which is an unjust loss to the plaintiff, "[i]f disregarding the separate existence would harm innocent third parties, it may be just to allocate the loss to the complainant, notwithstanding the wrong." *Id*.

## A. PRIOR CASELAW ON PIERCING THE CORPORATE VEIL

"There is no single rule delineating when the corporate entity may be disregarded." *Foodland Distrib*, 220 Mich App at 456. But a review of Michigan caselaw provides some scenarios where parties have succeeded and failed in their respective attempts to pierce the corporate veil, none of which are applicable to Modern Shed Design. For example, in *Foodland Distrib*, the owners of a corporation were held liable for the debts of the corporation where it was determined to be a mere instrumentality of those shareholders. In that case, New Metro was a wholesaler of grocery items and was owned on paper by a single shareholder, defendant Atour Abro (Abro). The de facto owner of the corporation was her brother, defendant Amir Al-Naimi (Amir). The plaintiff sued these defendants and others, including Amir's wife, alleging that it provided close to $700,000 of groceries to New Metro over a short period of time and that no payment had ever been made. Around the same time, New Metro assumed $400,000 in debt, with no consideration, as part of a restructuring of Amir and his wife's personal debt. This Court held that New Metro was a mere instrumentality of Amir, that clear and convincing evidence showed that Amir had committed fraud, and that the plaintiff had unjustly suffered almost $700,000 for unpaid grocery products. As a result, we held that the plaintiff could recover against Amir, his wife, and Abro, i.e., the plaintiff could pierce the corporate veil and reach the owner and de facto owners of New Metro. *Id*. at 457-459.

Other plaintiffs have attempted to pierce the corporate veil in cases in which they alleged that a parent corporation was the alter ego of one of its subsidiaries. See, e.g., *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 643; 802 NW2d 717 (2010), and *Seasword v Hilti, Inc*, 449 Mich 542; 537 NW2d 221 (1995). In *Dutton*, the plaintiff sued a holding company, CMS Energy (CMS), for damages alleged to have been caused by the negligence of its subsidiary, Consumers Energy Company (Consumers). Although CMS and Consumers were separate corporate entities with their own respective officers and boards of directors, the plaintiff argued that CMS was the alter ego of Consumers, i.e., that they were the same entity, because they shared the same corporate address, they made joint filings with the Securities and Exchange Commission, and despite CMS's assertions to the contrary, corporate filings and the company's website indicated that it shared the same officers and board of directors. *Dutton*, 290 Mich App at 638-639. In that case we explained that, in order to state a claim for tort liability based on a parent-subsidiary relationship, a plaintiff must allege (1) the existence of a parent-subsidiary relationship, and (2) facts that justify piercing the corporate veil. *Id*. at 642-643. We reversed the trial court's

denial of the defendants' summary disposition motion because the plaintiff had failed to demonstrate evidence of fraud, wrongdoing, or misuse of the corporate form, meaning the plaintiff could not prevail on an alter-ego theory of liability. *Id*. at 645.

## B. PIERCING THE CORPORATE VEIL IN THE PRESENT CASE

Turning to the present case, plaintiff's first amended complaint alleged that Modern Shed Design is the alter ego of Stubborn Rebel Farms, that it is also the alter ego of Zachery, and that "the corporate veil should be pierced to avoid the company being used for fraudulent purposes." In plaintiff's brief in support of her motion for summary disposition, as well as in her brief on appeal, she argued that Modern Shed Design was a mere instrumentality of Zachery and Stubborn Rebel Farms, i.e., that Modern Shed Design is an alter ego of Zachery and Stubborn Rebel Farms.

But plaintiff did not argue that Modern Shed Design was a subsidiary or parent of Stubborn Rebel Farms. Likewise, plaintiff did not argue that Stubborn Rebel Farms was an owner or shareholder of Modern Shed Design. Rather, plaintiff argued that Stubborn Rebel Farms and Modern Shed Design are the same company with the latter entity having been formed to elude debts owed to plaintiff and possibly other creditors. Plaintiff also did not argue that Zachery was an owner of, or even de facto owner of, Modern Shed Design. While, as discussed below, plaintiff's argument and the evidence submitted may support a theory of successor liability against Modern Shed Design, they do not support a theory of attaching liability to Zachery or Stubborn Rebel Farms by piercing the corporate veil of Modern Shed Design.

While plaintiff cites *Allstate Ins Co v Citizens Ins Co of America*, 118 Mich App 596, 600; 325 NW2d 505 (1982), and *Klager v Robert Meyer Co*, 415 Mich 402, 411-412; 329 NW2d 721 (1982), neither supports her argument for piercing the corporate veil in this case. In *Allstate*, the plaintiff asked this Court to pierce the corporate veil of a corporation where there was no allegation of any fraud, illegality, or injustice by any member of the corporation and the corporation and its shareholder were not even parties to the case, and we declined to do so. *Allstate*, 118 Mich App at 601. In *Klager*, a partnership assigned a lease to a corporation that was undercapitalized for the purposes of insulating the shareholder. *Klager*, 415 Mich at 405-406. The lessor agreed to the assignment, in part because the partnership would have had the right to rescind the lease if the lessor did not agree. *Id*. Years later, after the corporation's efforts to develop the land proved futile, it stopped paying rent and real estate taxes, after which the lessor filed a lawsuit that included a claim to pierce the corporate veil as to the partners (of the partnership) and the shareholders (of the corporation). *Id*. at 410. The Michigan Supreme Court ultimately held that the corporate veils of the entities could not be pierced because the plaintiff had not pleaded or proven that the partners or shareholders committed fraud or attempted to evade the law. The facts from *Allstate* are in no way similar to the present case and so do not support plaintiff's argument. While *Klager* at least involves a traditional attempt to pierce the corporate veil, the target defendants were partners or shareholders, whereas there is no evidence here that Zachery or Stubborn Rebel Farms have any ownership interest in Modern Shed Design, i.e., *Klager* likewise does not support plaintiff's argument.

Plaintiff has cited to no Michigan case that is comparable to the present case. In fact, plaintiff has cited to no case in which a court pierced a corporate veil where the defendants held liable for that corporate entity were not shareholders or owners of the corporate entity.

Thus, we find that the trial court did not err when it granted summary disposition on plaintiff's piercing-the-corporate-veil claims as to Modern Shed Design.

## V. CONTRACT DAMAGES

Plaintiff also asserts that the trial court erred by awarding her only $52,868.42 in damages because this award did not include the additional $21,554.67 she allegedly needed to build the greenhouse and office sheds. We disagree.

We review for clear error a trial court's findings of fact on the issue of damages and its conclusions of law de novo. *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 279; 829 NW2d 345 (2013). Clear error occurs when this Court is "left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

Damages are an element of a breach of contract claim. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017). The general purpose of contract damages is to make the plaintiff whole, or "place the nonbreaching party in as good a position as if the contract had been fully performed." *Roberts v Farmers Ins Exch*, 275 Mich App 58, 69; 737 NW2d 332 (2007) (quotation marks and citation omitted). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Van Buren*, 319 Mich App at 550 (quotation marks and citation omitted). The damages cannot be speculative or conjectural, or based solely on chance. *Id.* at 551. And while damages do not need to be established with precision, " 'uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.]' " *Id.* (citation omitted).

The trial court awarded plaintiff the $29,100 that she paid to defendants to build the three sheds. The trial court also awarded plaintiff an additional $23,768.43, which represented the additional amount plaintiff spent to build the winery shed through a financing arrangement with a new builder. During the evidentiary hearing, plaintiff testified that she did not purchase the greenhouse or office sheds because she could not afford them. Yet plaintiff was able to open her winery business without the other two buildings, rendering it unclear whether she would ever purchase the office or greenhouse or whether she even needed those structures for her winery. And she acknowledged she did not attempt to obtain a loan for the greenhouse and office sheds. Thus, it is not clear that plaintiff would ever purchase the greenhouse and office sheds, even if she had the money, because she was able to operate her business without them. Under these circumstances, plaintiff did not establish that the award of further damages from the breach were required to make her whole. See *id*. See also *Frank W Lynch & Co v Flex Techs, Inc*, 463 Mich 578, 586 n 4; 624 NW2d 180 (2001) (noting that the usual measure of damages recoverable for breach of contract either arise naturally from the breach or were contemplated by the parties when the contract was made).

## VI. MOTION TO AMEND COMPLAINT

Plaintiff next contends the trial court abused its discretion by denying her request to amend the complaint to raise claims relating to the alleged asset transfer from Stubborn Rebel Farms to Modern Shed Design. We agree.

We review a trial court's decision to deny leave to amend the complaint for an abuse of discretion. *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 696; 588 NW2d 715 (1998). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). We also review the trial court's denial of a motion for reconsideration for an abuse of discretion. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012).

The rules relating to the amendment of pleadings exist to promote amendment unless prejudice to the opposing party would result. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006). The decision to grant or deny leave to amend the pleadings falls within the trial court's discretion. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182; 207; 920 NW2d 148 (2018). MCR 2.118(A)(2) provides, in relevant part, that "[l]eave shall be freely given when justice so requires." For this reason, the trial court must ordinarily deny a motion to amend for "particularized reasons," such as "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility." *Wormsbacher v Phillip R Seaver Title Co, Inc*, 284 Mich App 1, 8; 772 NW2d 827 (2009). The trial court must specify the reasons it is denying leave to amend, and its failure to do so warrants reversal of the court's ruling unless the amendment is futile. *PT Today*, 270 Mich App at 143. "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face, (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *Id*. (citations omitted). "On a motion to amend, a court should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face[.]" *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 660; 213 NW2d 134 (1973).

After the court ruled on plaintiff's motion for summary disposition but before the final judgment was entered, plaintiff moved to amend the complaint (1) to include claims for fraudulent conveyance and successor liability against Modern Shed Design, (2) to add claims for piercing the corporate veil against Zachery, and (3) to add claims for fraudulent conveyance against Zachery.

Plaintiff argued that a fraudulent conveyance of Stubborn Rebel Farms' assets occurred after the court ruled that plaintiff was entitled to a refund but before the final judgment had been entered. Plaintiff further suggested that her fraudulent-conveyance claim was a "fraud in law" claim, which consists of the following three elements: "(1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive 'reasonably equivalent value in exchange for the transfer . . . .' " *Dillard v Schlussel*, 308 Mich App 429, 446-447; 865 NW2d 648 (2014), quoting MCL 566.35(1). In her proposed second-amended complaint, plaintiff alleged that (1) Zachery transferred Stubborn Rebel Farms' assets, goodwill, equipment, and websites to Modern Shed Design and himself; (2) Modern Shed Design and Zachery did not pay for the assets; and (3) the transfer was conducted to defraud Stubborn Rebel Farms' creditors, such as plaintiff. The basis for plaintiff's motion to amend the

complaint was "newly discovered evidence and new actions that have taken place" since the filing of the initial lawsuit.

In further support of her claim for successor liability, plaintiff attached documentation showing that Tera, Zachery's wife of 12 years, was the sole legal owner of Modern Shed Design, which was formed only days after Zachery received a demand letter from Robert's attorney. Plaintiff noted that Zachery also conducted business for Modern Shed Design, that the two companies shared the same facility and workers, and that neither entity paid the other for use of the facility or workers. Further, plaintiff cited to Zachery's deposition testimony, agreeing with the statement that "it's basically two different product lines coming out of the same facility." Plaintiff also produced social-media posts suggesting that the two companies were operating in tandem, including one in which Stubborn Rebel Farms announced it was working with Modern Shed Design to help with customer service, explaining: "It's still us Stubborn Rebel Farms Inc just with some help!" Finally, plaintiff produced documentation indicating that the bank account for Stubborn Rebel Farms had been drained and closed, that a bank account for Modern Shed Design was opened, and significant deposits had been made to the Modern Shed Design account.

During the hearing, the trial court ruled: "There's no basis for this. This is all–it's, it's based on emotional, speculative arguments, no evidence of it has been supported. There are just bald accusation [sic]." The court acknowledged that Stubborn Rebel Farms did not appear to be creditworthy and there was no guarantee that a judgment against it would be collectible.

This Court previously addressed the issue of whether the legal successor of a prior corporation may be liable for the debts of the predecessor (i.e., successor liability) in *Lakeview Commons Ltd Partnership*, 290 Mich App at 503. In *Lakeview*, the plaintiff alleged that Empower Yourself, LLC (Empower) was liable to it for breach of a lease agreement. *Id*. at 505. The plaintiff brought suit against Hamsa, LLC (Hamsa), arguing that it was a mere continuation of Empower. *Id*. at 506. Empower ceased operations the same month Hamsa was created. *Id*. at 508. Both were in the business of fitness and personal training, and both operated in the same manner. *Id*. Phyllis Swalwell (Phyllis) owned 80 percent, and Troy Swalwell (Troy) owned 20 percent, of both Empower and Hamsa. *Id*. at 509. Phyllis was the president and managing member of both. *Id*. Troy was the vice president and registered agent of both and also signed the annual reports and tax returns for both. *Id*. Troy and Phyllis were signatories on both Empower and Hamsa's bank accounts, neither company kept corporate minute books or operating agreements, and both companies conducted informal meetings without minutes. *Id*. The telephone number that had been Empower's became Hamsa's number. *Id*. Hamsa's website said it was formerly known as Empower and gave details on its new location. *Id*. Under those facts, this Court held that reasonable minds could differ as to whether Hamsa was the mere continuation of Empower and reversed the trial court's order granting the defendants summary disposition on that issue. *Id*.

As plaintiff notes, a "fraud in law" claim, also known as constructive fraud, "deems certain transactions fraudulent regardless of the creditor's ability to prove the debtor's actual intent." *Dillard*, 308 Mich App at 446. The claim only applies to transfers (i.e., conveyances) made after the creditor's claim arises. *Id*. "Three elements of proof are required: (1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive "reasonably equivalent value in exchange for the transfer. . . ." *Id*. at 446-447, quoting MCL 556.35(1).

-14-

Under the unique circumstances of the present case, we hold that the trial court abused its discretion by refusing to allow plaintiff to file a second amended complaint containing claims for successor liability and fraudulent conveyance. Clearly, much had changed since plaintiff filed her motion for summary disposition, as demonstrated by credible evidence that fraudulent transfers may have occurred and that Modern Shed Design was a mere continuation of Stubborn Rebel Farms, as described above. Justice required that the trial court allow plaintiff to amend her complaint to add these additional claims because she has not previously had a realistic opportunity to pursue those claims and, denial of her motion to amend the complaint could result in any further pursuit of those claims being barred by res judicata (which is precisely what occurred when plaintiff filed her subsequent lawsuit). In other words, by denying plaintiff's motion, the trial court placed plaintiff in a nearly impossible situation—she lacked sufficient knowledge, evidence, or both, regarding the fraudulent transfers until after the court heard and preliminarily ruled upon the summary disposition motion, so the court's denial of plaintiff's motion meant she would not have an opportunity to pursue those claims despite having raised them in a timely manner. Because justice requires that plaintiff be permitted to litigate these claims, the trial court abused its discretion when it denied plaintiff's motion for leave to file a second amended complaint adding claims of fraudulent conveyance and successor liability as described.

## VII. DISMISSAL OF THE SUBSEQUENT LAWSUIT

Plaintiff's last argument is that the trial court erred by dismissing the subsequent lawsuit on the basis that each claim was either barred by res judicata or failed to state a claim on which relief can be granted.

A motion for summary disposition under MCR 2.116(C)(7) examines whether summary disposition is proper because of a prior judgment. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). This Court considers the documentary evidence in the light most favorable to the nonmovant. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id*. (quotations marks and citation omitted).

A motion for summary disposition under MCR 2.116(C)(8) examines the legal sufficiency of the complaint. *El-Khalil*, 504 Mich at 159. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. The trial court may only grant the motion for summary disposition when the claims are so clearly unenforceable that no factual development of the case would justify the plaintiff's recovery. *Id*. This Court also reviews de novo the question of whether res judicata bars a subsequent action. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). Finally, the issue of successor liability is an equitable concept and is reviewed de novo. *Lakeview Commons*, 290 Mich App at 506.

The doctrine of res judicata bars a subsequent lawsuit raising the same cause of action as a prior lawsuit. *Adair*, 470 Mich at 105. The doctrine applies when the following three elements are met: "(1) the prior action was decided on the merits, (2) both actions involve the same parties

or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007) (quotation marks and citation omitted). The doctrine is applied broadly to claims that arise from the same transaction, and that the parties could have raised if they had exercised reasonable diligence. *Id*.

Whereas res judicata precludes entire actions, collateral estoppel focuses on specific issues within an action. *Synergy Spine & Orthopedic Surgery Ctr LLC v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 364359); slip op at 4. The elements of collateral estoppel are: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full and fair opportunity to litigate the issue, and (3) there must be mutuality of estoppel.[10] *Id*. (quotation marks and citation omitted.)

Plaintiff disputes whether the prior action was decided "on the merits." The trial court's denial of a motion to amend the complaint based on undue delay, bad faith, dilatory motive, or undue prejudice is not considered a decision on the merits. *Martin v Mich Consol Gas Co*, 114 Mich App 380, 383; 319 NW2d 352 (1982). However, when the court denies the motion under the category of futility, the court has decided that the new claims are "substantively without merit," meaning that they are frivolous or legally insufficient. *Id*. at 384. Thus, a decision that the amendment is futile has res judicata implications in future cases. *Id*.

Again, the subsequent lawsuit was filed against Tera, Zachery, and Modern Shed Design. Count 1 of the complaint alleged fraudulent conveyance as to all defendants, count 2 alleged successor liability as to Modern Shed Design, count 3 was a request to pierce the corporate veil as to Tara and Zachery, and count 4 alleged a civil conspiracy by all defendants to defraud creditors. The court dismissed count 1 under MCR 2.116(C)(7) (prior dismissal of a claim, i.e., res judicata) and 2.116(C)(8) (failure to state a claim). The court dismissed count 2 pursuant to MCR 2.116(C)(7) (res judicata). Count 3 was also dismissed pursuant to res judicata, as well as failure to state a claim. The court dismissed count 4 because it was a derivative claim that could not survive the dismissal of counts 1, 2 and 3.

With regard to the trial court's dismissal of counts 1 and 2 based on res judicata, we conclude that the court erred because we have held that the trial court should not have dismissed the prior action (Docket No. 365169) and should have allowed plaintiff to file a second amended complaint to allege fraudulent conveyance and successor liability.

With regard to the court's dismissal of count 3, we note, as the trial court observed, that count 3 does not actually state the name of the entity whose corporate veil plaintiff wishes to pierce, it only makes various allegations that Tara and Zachery have abused the corporate form to take funds from numerous parties and then transfer those funds to another entity, that they used corporate funds for personal purposes, and that equity should be invoked to pierce the corporate veil because they will "continue to take money from unsuspecting victims." Because we have affirmed the court's dismissal of plaintiff's claim on the issue of piercing the corporate veil as to

_____

[10] The third element is subject to the exception announced by the Michigan Supreme Court in *Monat v State Farm Ins Co*, 469 Mich 679, 695; 677 NW2d 843 (2004).

Modern Shed Design, to the extent that the complaint requested the trial court to allow it to pierce the corporate veil of Modern Shed Design, we agree that the court's dismissal of count 3 in the subsequent complaint on the basis of MCR 2.116(C)(7), was proper, although it should have been based on collateral estoppel and not res judicata. See *Synergy Spine*, ___ Mich App at ___; slip op at 4. Because count 3 does not actually state a claim as to piercing the corporate veil as to any specific entity, we likewise find that the court properly held that plaintiff's complaint failed to state a claim as to count 3, i.e., dismissal was proper under MCR 2.116(C)(8).

With regard to the court's dismissal of count 4 (civil conspiracy), because the court's dismissal of that count was based on the fact that it could not survive the dismissal of all other remaining counts (because it was derivative of those counts), we remand that issue to the trial court to determine whether count 4 should be dismissed.

## VIII. CONCLUSION

With regard to Docket No. 364169, we affirm the trial court's September 8, 2022 order granting summary disposition to defendant Zachery on plaintiff's claims for breach of contract and conversion, to defendant Stubborn Rebel Farms on plaintiff's claims for conversion, and to defendant Modern Shed Design on plaintiff's claim for piercing the corporate veil. We also affirm the trial court's February 16, 2023 judgment entered against defendant Stubborn Rebel Farms in the amount of $52,868.42; however, we vacate the portion of the judgment reflecting that "THIS IS A FINAL ORDER AND CLOSES THE CASE." We further reverse the trial court's December 12, 2022 order denying plaintiff's motion for leave to file a second amended complaint and remand to the trial court for further proceedings consistent with this opinion.

With regard to Docket No. 367451, we affirm in part the trial court's August 21, 2023 order granting summary disposition to defendants as to count 3 (piercing the corporate veil); however, we reverse in part as to counts 1, 2 and 4, and remand to the trial court for further proceedings consistent with this opinion.

We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace